## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**GIRISH MODI,**

    **Plaintiff,**

**v.**

**RICHARD T. ALEXANDER,** *Clerk of the State Court of Gwinnett County*,

    **Defendant.**

**CIVIL ACTION FILE**

**No. 1:19-cv-05619-AJB**

## ORDER AND OPINION[1]

Several filings are pending before the Court. First, the Court discusses Plaintiff's Motion for Recusal. [Doc. 45]. Then, the Court turns to Plaintiff's Amended Motion for Leave to File Amended Complaint ("Motion to Amend"). [Doc. 48]. Finally, the Court addresses the prior Order of the District Judge then assigned to the case that entered a stay and ordered Plaintiff to identify the basis for the Court's jurisdiction. [Doc. 21]. For the reasons set forth below, the undersigned **DENIES** the Motion for Recusal and Motion to Amend and, upon

---

[1]    The parties have consented to the exercise of jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. [*See* Doc. 30]. Therefore, this Order constitutes a final Order of the Court.

consideration of the District Judge's prior Order and Plaintiff's responses thereto, **DISMISSES PLAINTIFF'S COMPLAINT WITHOUT PREJUDICE** for lack of jurisdiction.  All other pending motions are **DENIED AS MOOT**.

## I.    *Introduction*

On December 16, 2019, Plaintiff filed a complaint against Richard T. Alexander, Clerk of the State Court of Gwinnett County, alleging that Georgia's post-judgment continuing-wage-garnishment statute is contradictory, burdensome, and unconstitutionally violates due process.  [Doc. 1 at 1].  Plaintiff sought appropriate declaratory and injunctive relief.  [Doc. 1, *passim*].  Plaintiff filed a supplementary pleading on December 19, 2019 ("Supplementary Pleading"), a Motion to Certify Class on December 26, 2019, and a Consent to Jurisdiction by U.S. Magistrate Judge on January 13, 2020.  [*See* Docs. 4, 6, 8].

On January 15, 2020, Plaintiff filed a Motion for Judgment on the Pleadings and then moved to withdraw that motion two days later.  [Docs. 11, 14].  Plaintiff filed a Notice of Filing Second Supplementary Pleading on January 17, 2020 ("Second Supplementary Pleading"), a Motion for a Three-Judge Court on January 24, 2020, and a Motion to Add the Attorney General of Georgia on February 10, 2020.  [Docs. 12, 15, 17].  Defendant filed a Motion to Dismiss for Failure to State a Claim on February 5, 2020, to which Plaintiff filed a response

2

and a supplemental response.  [Docs. 16, 18, 20].  On February 12, 2020, Plaintiff filed an Emergency Motion for Preliminary Injunctive Relief that was denied by the District Judge on February 19, 2020.  [Docs. 19, 25].

On February 13, 2020, the District Judge entered an Order directing Plaintiff to file a notice indicating the basis for the Court's jurisdiction within 21 days and staying the case until further order of the Court.  [Doc. 21].[2]  On February 14, 2020, Plaintiff filed a Pro se Motion for Leave to file an Amended Complaint and a Notice of Court's Jurisdiction; on February 18, 2020, Plaintiff filed a Motion for Reconsideration of the Court's Order entering a stay; and on the same day filed a Notice of Filing an Amended Notice of Court's Jurisdiction.  [Docs. 23-24, 26-27]. On February 20, 2020, Plaintiff filed another Emergency Motion or Preliminary Injunctive Relief.  [Doc. 28].  On the same day, the District Judge granted the parties' consent to jurisdiction by a magistrate judge.  [Doc. 30].

On February 21, 2020, Defendant replied to Plaintiff's Motion to Add Party; on February 24, 2020, Plaintiff filed another Pro Se Motion for Leave to Amend; and on March 27, 2020, Plaintiff filed a Pro Se Third Motion to Grant Leave to

---

[2]      The Court notes that, despite the stay being entered, Plaintiff's filings continued unabated.  [*See*, *e.g.*, Docs. 33, 36, 46, 48].  Defendant submitted materials as well, but only in response to Plaintiff's filings.  [*See*, *e.g.*, Docs. 29, 49].

Amend his Complaint.  [Docs. 29, 33, 36].  On April 13, 2020, Plaintiff filed a Renewed Emergency Motion for Preliminary Injunctive Relief and on April 21, 2020, Defendant filed a Response in Opposition to Plaintiff's Motion for a Preliminary Injunction.  [Docs. 40, 42].  On April 14, 2020, Defendant filed a Response in Opposition to Plaintiff's Motion for Leave to File an Amended Complaint and, on April 16, 2020, Plaintiff filed a Reply in support of the Motion for Leave.  [Docs. 39, 41].

On May 7, 2020, Plaintiff filed a Motion for Recusal, and on May 11, 2020, filed a document that was construed by the Clerk's Office to be a Motion for Ruling on Pending Motions.  [Docs. 45, 46].  On June 5, 2020, Plaintiff filed his Motion to Amend; on June 22, 2020, Defendant filed a response in opposition; and on July 6, 2020, Plaintiff filed a reply brief in support.  [Docs. 48, 49, 51].

## II.    Facts

In his original complaint, Plaintiff alleges that Georgia's post-judgment continuing-wage-garnishment statute is "contradictory, burdensome, unfair, unconstitutional and violates due process requirements."[3]  [Doc. 1 at 1].  Plaintiff

---

[3]    All facts alleged by Plaintiff are assumed to be true for purposes of deciding the motion to amend and are construed in a light most favorable to Plaintiff as the moving party.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962) ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper

states that he is a judgment-creditor jointly and severally against Ramzan Virani ("Ramzan") and his spouse Shehnaz Virani ("Shehnaz") following a judgment in the Superior Court of Gwinnett County. [*Id.*]. Plaintiff alleges that after he received a writ of execution against the Viranis, they filed separate bankruptcy petitions. [*Id.* at 2]. Plaintiff alleges that Ramzan withdrew his petition but Shehnaz's petition moved forward and hers was ultimately denied after three years of litigation. [*Id.*]. Plaintiff alleges that he thereafter initiated a continuing wage garnishment case against Shehnaz, who was employed at the Gwinnett Clinic, but did not initiate a suit against Ramzan because he is unemployed. [*Id.*]. The case against Shehnaz was given docket number 18-GC-00817. [*Id.*]. The Gwinnett Clinic filed its answer and ultimately $2,619.88 was collected and disbursed by the Superior Court before the case was closed. [*Id.* at 2-3].

Plaintiff alleges that he was instructed to file a new writ or summons instead of re-opening the case, which he did on November 13, 2019, at a cost of $263 in

---

subject of relief, he ought to be afforded an opportunity to test his claim on the merits."); *State St. Glob. Advisors Tr. Co. v. Visbal*, 431 F. Supp. 3d 322, 330 n.1 (S.D.N.Y. 2020) (" '[A] court must accept the facts alleged by the party seeking amendment as true and construe them in the light most favorable to that party.' ") (citations omitted). Similarly, in determining whether a proposed amendment would be futile, the Court must take the facts as alleged by Plaintiff in his proposed amended complaint as true. *Duling v. Domino's Pizza, LLC*, No. 1:13-CV-01570-WCO, 2014 WL 11955397, at *3 (N.D. Ga. Sept. 2, 2014).

5

fees.  [*Id.* at 3].  That case was given docket number 19-GC-03497.  [*Id.*].  Plaintiff alleges that when new summons was served on the Gwinnett Clinic and Shehnaz, they "got confused and upset," and Shehnaz filed a motion to dismiss the new matter.  [*Id.*].  At a hearing on December 12, 2019, the court explained why a new filing was required and Plaintiff asked the judge to waive the statute, but his request was denied.  [*Id.*].  Plaintiff alleges that he had problems following the continuing wage garnishment statutes because they contradict other statutes, are unconstitutional, and place undue burdens on him and other similarly situated individuals.  [*Id.* at 4].

Specifically, Plaintiff contends that O.C.G.A. § 18-4-4(c)(1) is in conflict with O.C.G.A. § 18-4-9 because the former limits the period for a continuing wage garnishment to 179 days and does not specify that a new summons will be issued after two years, but the latter states that summons of garnishment may be issued from time to time until the judgment is paid or the proceedings are otherwise terminated and that no new summons of garnishment shall issue after two years from the date of the filing of the original affidavit.  [*Id.*].  Plaintiff asks why the continuing garnishment should only be effective for two years.  [*Id.*].

Second, Plaintiff contends that O.C.G.A. § 18-4-10(b) caused an undue delay in Shehnaz's answer and the loss of two and a half months garnishment due

to the discontinuity between when Plaintiff received a garnished check in early October and when a new summons was issued in mid-November. [*Id.*]. Plaintiff contends that, without the 30-day waiting period for Shehnaz's first answer in the second case, there would have been continuity and no garnished wages would have been lost. [*Id.* at 5]. Plaintiff argues that this problem will occur every six months, which results in judgement-creditors being treated unfairly, and so the statutes for continuing wage garnishment for family support and non-support should be merged. [*Id.*].

Plaintiff argues that, without a change being implemented, it will take him approximately 20 years to collect the debt owed and he will pay $10,520 in court costs over that time. [*Id.* at 6]. Plaintiff argues that this is unfair where the garnishment statute for family support, O.C.G.A. § 18-4-4(c)(3), allows a single summons and only one case as long as a debt remains unpaid. [*Id.*]. In support of his position, Plaintiff cites to garnishment statutes from different states, including California and Michigan. [*Id.* at 7-8]. Plaintiff also points to a decision from the Third Circuit, *Finberg v. Sullivan*,[4] which he argues recognizes a creditor's interest

---

[4]    634 F.2d 50 (3d Cir. 1980).

7

in seeking quick and inexpensive satisfaction of a debt after having obtained judgment.  [*Id.* at 8].

As relief, Plaintiff requests that Defendant be enjoined from enforcing §§ 18-4-4(c)(1) and 18-4-4(c)(3) and that the Court merge the two code sections together.  [*Id.* at 9].  Plaintiff further requests that Defendant be enjoined from imposing the requirements of O.C.G.A. § 18-4-8(b) on Plaintiff and that the Court make garnishees responsible for notifying debtors of garnishments because debtors have a direct relationship with the employee and can better explain the garnishment process.  [*Id.*].  Plaintiff contends that these modifications will help countless similarly situated judgment creditors and employers.  [*Id.*].

Plaintiff subsequently filed his Supplemental Pleading and requested that it be reviewed with his Complaint.  [Doc. 4].[5]  In his Supplemental Pleading, Plaintiff invokes the Equal Protection Clause.  [*Id.* at 1].  Plaintiff contends that, under the Equal Protection Clause, no state shall deny any person within its jurisdiction equal protection of the laws.  [*Id.* at 2].  Plaintiff contends that Georgia's wage-

---

[5]    Ordinarily, filing "a motion is the proper method to request leave to amend a complaint . . . .  A motion for leave to amend should either set forth the substance of the proposed amendment or attach a copy of the proposed amendment." *Long v. Satz*, 181 F.3d 1275, 1279 (11th Cir. 1999).  Nevertheless, in the circumstances of this case, the Court will consider the supplements in tandem with the original complaint.

8

garnishment statutes are extremely harsh and ask judgment-creditors to give up collection efforts against poor debtors. [*Id.* at 3]. Plaintiff argues that the Senate Bill that included all the revised garnishment statutes, Senate Bill 255, was hurriedly submitted to the Georgia Assembly and was confusing, biased, and unconstitutional. [*Id.* at 4]. Plaintiff contends that it is actually innocent judgment-creditors who need protection in the wage-garnishment statute because they are likely not to collect the full amount owed as judgment-debtors are dishonest. [*Id.* at 5].

Plaintiff subsequently filed his Second Supplementary Pleading in order to clarify the issues raised in his original complaint regarding service of the wage garnishment summons upon a garnishee and Defendant in compliance with O.C.G.A. § 18-4-8. [Doc. 12 at 1]. Plaintiff identifies the following problems he has faced with garnishing Shehnaz's wages. [*Id.*]. First, Plaintiff argues that his first case was dismissed because he was not aware of the requirement under § 18-4-8 regarding service. [*Id.* at 2]. Plaintiff notes that he mailed the forms via first class mail and Shehnaz responded, which made serving by other means moot, but the presiding judge still dismissed the case. [*Id.*]. Plaintiff contends that he had to then re-file the case and pay the associated fees, resulting in case number 18-GC-00817, only for Shehnaz to appeal the denial of her request to stop the

garnishment, which took four months. [*Id.* at 3]. Plaintiff argues that Shehnaz changed jobs, which resulted in the case being closed for five months, and it took six months for him to identify her new employment. [*Id.*]. He notes that he successfully refiled his case, number 18-GC-00084, and successfully served Shehnaz with a copy of the summons. [*Id.*]. However, the case was closed after 179 days and he was forced to pay again for another writ to be filed. [*Id.* at 3-4]. Plaintiff points out that he also lost the cost of mailing certified letters multiple times. [*Id.* at 4].

Plaintiff argues that the revised § 18-4-8 contains ridiculous and complicated requirements that put an undue burden on him when Shehnaz refused to pay her debt. [*Id.*]. Plaintiff argues that most defendants know what exemptions are available to them and if they do not agree with the amount garnished may resolve that with their employer. [*Id.* at 5]. Plaintiff contends that service of the summons and claim form should be left with the garnishee-employer, who has a relationship with the debtor, and not the Plaintiff. [*Id.* at 6]. Plaintiff also argues that the Court must protect his due process rights by eliminating the requirements of § 18-4-8 that place an undue burden on him and cause him great aggravation. [*Id.*].

Attached to the Second Supplement Pleading, Plaintiff included an order from the Superior Court of Fulton County, dated January 30, 2018, dismissing his claim to garnishment for failure to serve Defendant.  [*Id.* at 7].

### III.  *Motion for Recusal*

Plaintiff's Motion for Recusal requests that the District Judge in this matter rescind the Order entered following the parties' consent to the jurisdiction of the undersigned, on the grounds of inefficiency and failing to rule on pending motions in a timely manner, and requests either that the District Judge handle the matter directly or assign it to another Magistrate Judge. [*See* Doc. 45].  Treating Plaintiff's motion as a motion to withdraw consent to the undersigned's jurisdiction, the Court notes that there is no absolute right to withdraw consent to jurisdiction before a magistrate judge once consent is given.  *See United States v. Neville*, 985 F.2d 992, 999 (9th Cir. 1993) (citing *Carter v. Sea Land Services*, 816 F.2d 1018, 1021 (5th Cir. 1987)).   Once a civil case is referred to a magistrate judge under 28 U.S.C. § 636(c), the reference can be withdrawn by the court only "for good cause on its own motion, or under extraordinary circumstances shown by any party." 28 U.S.C. § 636(c)(4); Fed. R. Civ. P. 73(b)(3).

Plaintiff has not shown good cause.  As the procedural history indicates, the District Judge stayed the case pending resolution of the jurisdictional issue, which

issue the Court resolves herein.  Furthermore, "[d]issatisfaction with a magistrate judge's decision does not constitute 'extraordinary circumstances.' " *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 172 (5th Cir. 2011).

Moreover, to the extent that Plaintiff's motion is analyzed as a recusal motion under 28 U.S.C. § 455, that code section provides that a federal judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." *Id.*, § 455(a).  Any doubt "must be resolved in favor of recusal." *Murray v. Scott*, 253 F.3d 1308, 1310 (11th Cir. 2001).  "The inquiry of whether a judge's impartiality might reasonably be questioned under § 455(a) is an objective standard designed to promote the public's confidence in the impartiality and integrity of the judicial process.[ ]  Thus, the court looks to the perspective of a reasonable observer who is *informed of all the surrounding facts and circumstances*." *In re Evergreen Sec., Ltd.*, 570 F.3d 1257, 1263 (11th Cir. 2009) (internal citations omitted) (emphasis in original).  When considering recusal, the potential conflict must be considered as it applies to the entire case.  *See Murray*, 253 F.3d at 1310-11.  A judge contemplating recusal should not ask whether he believes he can impartially preside over the case but whether "[the judge's] impartiality might reasonably be questioned." *Parker v. Connors Steel Co.*, 855 F.2d 1510, 1523 (11th Cir. 1988).  But a judge has a duty to sit when there is

12

no legitimate reason to recuse as when the law and facts require.  *See United States v. Malmsberry*, 222 F. Supp. 2d 1345, 1349 (M.D. Fla. 2002) (citations omitted). Moreover, § 455(b) provides certain situations in which partiality is presumed and recusal is required.  If the judge reviews the enumerated conflicts of interest in which § 455(b) mandates recusal, and does not find that any apply, the judge must continue to preside over the case.  *See Jackman v. 20th Judicial Circuit Court Admin.*, No. 219CV828FTM38MRM, 2020 WL 5543914, at *2 (M.D. Fla. Sept. 16, 2020) (citation omitted).[6]

The undersigned finds no reason to recuse from this case.  First, none of the enumerated conflicts apply.   Second, Plaintiff's mere dissatisfaction with the Court's rulings or the progress of the case is not a basis for recusal.  Adverse rulings are rarely grounds for recusal.  *In re Walker*, 532 F.3d 1304, 1311 (11th Cir. 2008)

---

[6]     The enumerated conflicts of interest are numerous.  For example, Subsection 455(b)(1) requires a judge to disqualify himself "[w]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding."; 455(b)(2): "[w]here in private practice [the judge] served as a lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it."; and 455(b)(3): where the judge "served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy."  28 U.S.C. § 455 (b)(1)-(3).

(citing *Liteky v. United States*, 510 U.S. 540, 554 (1994)); *see also Moore v. Shands Healthcare, Inc.*, 617 Fed. Appx. 924, 927 (11th Cir. June 4, 2015) ("[A]dverse rulings provide grounds for an appeal, not a recusal."). Plaintiff has not demonstrated that recusal is appropriate. Accordingly, Plaintiff's motion for recusal, [Doc. 45], is **DENIED**.

The Court recognizes that Article-III jurisdiction must be reached as a threshold matter, and that it cannot "resolve contested questions of law when its jurisdiction is in doubt," *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998). However, the Court finds that Plaintiff's motion to file an amended complaint and whether the Plaintiff has Article-III standing are interrelated, and thus the Court first considers whether the proposed amended complaint in fact establishes Article-III standing.

## IV.  *Motion to Amend*

### A.  *Argument*

In his Motion to Amend, [Doc. 48], Plaintiff moves the Court for leave to file an amended complaint pursuant to Fed. R. Civ. P. 15(a)(2). Plaintiff presents no argument in support of his motion. [*See generally id.*].

In his proposed First Amended Complaint, Plaintiff states that he has added the Georgia Attorney General as a Defendant and has incorporated his Amended

Notice of the Court's Jurisdiction.  [Doc. 48-1 at 1].[7]  Plaintiff alleges that various provisions of Georgia's post-judgment wage-garnishment statute are disparate, unfair, and violate equal protection and due process.  [*Id.* at 2].  Plaintiff alleges that the Court has jurisdiction over this matter.  [*Id.* at 2-3].  Plaintiff also seeks class-action certification.  [*Id.* at 3].

In his "Statement of the Facts," Plaintiff alleges that he is a judgment-creditor jointly and severally against Ramzan and his spouse Shehnaz following a judgment in the Superior Court of Gwinnett County.  [*Id.* at 4].  Plaintiff argues that after he received a writ of execution against them, they filed separate bankruptcy petitions.  [*Id.*].  Plaintiff contends that Ramzan withdrew his, but Shehnaz moved forward with hers and her petition was ultimately denied after three years of litigation.  [*Id.*].  Plaintiff argues that he thereafter initiated a continuing-wage-garnishment case against Shehnaz, who was employed at the Gwinnett Clinic, but then needed to file a new action against her new employer after she quit.  [*Id.*].  The new cases docket number was 19-GC-000817.  [*Id.*].  The Gwinnett Clinic

---

[7]     Plaintiff asserts that his proposed First Amended Complaint would supersede Documents 1, 4, and 12, the original complaint and supplements, and would moot Documents 16, 18, 20, the motion to dismiss, response, and reply. [*See* Doc. 48 at 1 n.1]

filed its answer and ultimately $2,619.88 was collected and disbursed by the Superior Court before the case was closed.  [*Id.* at 4-5].

Plaintiff alleges that he was instructed to file a new writ or summons instead of re-opening the case, which he did on November 13, 2019, at a cost of $263 in fees. [*Id.* at 5].  This opened case number 19-GC-3497.  [*Id.*].  Plaintiff alleges that when new summons were served on the Gwinnett Clinic and Shehnaz, they "got confused and upset" and Shehnaz filed a motion to dismiss the new matter.  [*Id.*].  At a hearing on December 12, 2019, Plaintiff asked the Judge to waive the statute, but his request was denied.  [*Id.*].  Plaintiff alleges that his request for a certificate of review was also denied and notes that he was unaware of his ability to file renewed cases in his two previous actions and so had not done so.  [*Id.* at 5, 5 n.1].

Plaintiff asserts a due process claim against Alexander, the Clerk of the State Court for Gwinnett County, and who is responsible for processing garnishments by docketing the garnishment affidavit, issuing the summons of garnishment, depositing the garnished wages into the Court registry, and disbursing the money. [*Id.* at 6].  Plaintiff alleges that Defendant has not done anything wrong per se, but that he is implementing garnishment statutes that are disparate and unconstitutional. [*Id.*].  Plaintiff alleges that he was shortchanged six months of payments after a check was returned and will have to pay $263 every six months and his garnishment

16

action will continue because only around $450 is withheld every month and approximately $70,000 is due.  [*Id.* at 6-7].

Plaintiff also asserts an equal protection claim against the Attorney General.  [*Id.* at 7].  Plaintiff alleges that the Attorney General's duties include examining garnishment statutes and ensuring their clarity and constitutional validity.  [*Id.* at 7-8].  Plaintiff alleges that the Attorney General is an appropriate Defendant because his injury arises from the government's allegedly unlawful regulation.  [*Id.* at 8].  Plaintiff further alleges that his injuries are fairly traceable to the Attorney General's actions.  [*Id.*].

Plaintiff alleges an equal protection violation.  [*Id.* at 9].  Specifically, Plaintiff argues that O.C.G.A. § 18-4-4(c)(1) is in conflict with § 18-4-9 because the former limits the period for a continuing wage garnishment to 179 days and does not specify that a new summons will be issued after two years, but the latter states that summons of garnishment may be issued from time to time until the judgment is paid or the proceedings are otherwise terminated and the new summons would not issue on the same affidavit after two years.  [*Id.* at 10].

Second, Plaintiff contends that O.C.G.A. § 18-4-10(b) caused an undue delay in Shehnaz's answer and the loss of two and a half months garnishment due to the discontinuity between when Plaintiff received a garnished check in early

October and when a new summons was issued in mid-November. [*Id.*]. Plaintiff argues that this problem will occur every six months and asks that § 18-4-4(c)(1) be held unconstitutional. [*Id.* at 10-11].

Plaintiff further argues that his due process rights were violated. [*Id.* at 11]. Plaintiff contends that the current requirement that service be made within three days after the service on the garnishee by certified mail and first-class mail was not included in the previous statute and contradicts it. [*Id.*]. Plaintiff further alleges that the requirement that service be made upon a defendant within three days was also not included in the current statute. [*Id.* at 11-12]. Plaintiff alleges that these requirements are burdensome and unfair and also complains that plaintiffs are not timely notified when summons are timely served upon garnishees. [*Id.* at 12-13]. Plaintiff asserts that these laws should be modified by either asking the garnishee to inform the defendant what percentage of her wages will be garnished or allowing the plaintiff to send courtesy copies to defendant via first class mail within 30 days after the summons is issued. [*Id.* at 13].

Plaintiff also asserts that Defendants' illegal actions caused him injuries. [*Id.* at 14]. Specifically, Plaintiff contends that his injury is traceable to Defendant Alexander's action and the Attorney General's oversight. [*Id.*]. Plaintiff argues that they both possess authority to enforce the complained-of provisions. [*Id.*].

Plaintiff asserts that, because his injury arose from the allegedly unlawful regulation, it is redressable by this Court declaring the current wage-garnishment statutes unconstitutional.  [*Id.*].

Plaintiff contends that he has standing because he has suffered economic harm, his injury is traceable to Defendant(s), causation exists because Defendant(s) possess(es) authority to enforce the complained-of provision, and his injury is redressable by declaring the wage-garnishment statutes unconstitutional.  [*Id.*]. Because he has suffered injury-in-fact, causation, and redressability, he argues that he has standing and this matter is ripe for adjudication.  [*Id.* at 15].  Plaintiff points to the Eleventh Circuit's decision in *Strickland v. Alexander*[8] as support for his position.  [*Id.*].  Plaintiff also points to wage-garnishment statutes in other states as support.  [*Id.* at 15-17].

As relief, Plaintiff seeks a declaration under 28 U.S.C. § 2201 that the existing continuing-wage-garnishment statutes are unconstitutional in that they require the filing of a new case every six months for non-support type wage garnishments, that Defendant (presumably Alexander) be enjoined from enforcing two separate wage-garnishment statutes until they are merged and the statutes for

---

[8]     772 F.3d 876 (11th Cir. 2014).

wage family support and non-support become one, that Defendant (again, presumably Alexander) be enjoined from enforcing § 8-4-8(b) until it is changed, and that the garnishee be made responsible for notifying the debtor. [*Id.* at 18].

Plaintiff attached a number of documents to his proposed First Amended Complaint, including an order upon motion from the Gwinnett State Court in Case No. 19-GC-03497 denying Plaintiff's motion or a certificate of immediate review on the grounds that there was no basis for appeal. [*Id.* at 20]. Plaintiff has also attached a letter from Judge Pamela D. South of the Gwinnett State Court informing Plaintiff that she cannot assist him because as "a member of the judicial branch, [she] does not have the power to change the garnishment laws." [*Id.* at 25]. Judge South went on to state that "it is to the legislature that you must turn if you want changes made to the garnishment laws." [*Id.*]. Plaintiff also attached an order upon motion from the Gwinnett State Court in Case No. 19-GC-03497 denying Plaintiff's motion for a waiver of certain garnishment statutes on the basis that the court did not have authority to "waive" applicable laws. [*Id.* at 26].

Defendant Alexander filed a Response in Opposition to Plaintiff's Amended Motion for Leave to Amend Complaint ("Response"). [Doc. 49]. Defendant notes that Plaintiff received $2,619.88 through his first garnishment action, Case No. 18-GC-00817, and that his second garnishment action against Shehnaz, Case No. 19-

GC-03497, is currently open and that received money is being disbursed. [*Id.* at 5-6]. Defendant claims that Plaintiff did not appeal the denial of his request to have the statute waived. [*Id.* at 5]. Defendant further argues that Plaintiff has not identified what kind of declaratory relief he is seeking or whether his due process violation he is asserting is substantive or procedural. [*Id.* at 6]. Defendant notes that Plaintiff requests the Court enjoin the enforcement of two separate wage-garnishment statutes, or merge them, and so to act in the role of the Georgia Legislature. [*Id.*]. Defendant submits that Plaintiff's other request is that the service requirements imposed under § 18-4-8(b) be waived. [*Id.* at 6-7]. Defendant explains that a summons and affidavit of garnishment must normally be served on the defendant-debtor within three days after service of the summons of garnishment on the garnishee and Plaintiff seeks to have that obligation waived and to require the garnishee to notify the debtor of the garnishment. [*Id.*].

Defendant argues that Plaintiff's proposed amendment is futile because Plaintiff's action is not justiciable. [*Id.* at 8-9]. First, Defendant argues that Plaintiff has not established an injury-in-fact to support standing from having to file multiple summonses of garnishment. [*Id.* at 9]. Defendant argues that Plaintiff has been able to recover pursuant to the law that he is complaining of in both the existing and proposed amended complaints. [*Id.* at 11]. Defendant contends that

21

Plaintiff is, in fact, benefitting from Alexander's services. [*Id.*]. Defendant admits that, because Shehnaz earns only $14 per hour, recovering a $65,000 judgment will take time, but notes that O.C.G.A. § 18-4-80 allows for the recovery of costs associated with a summons. [*Id.* at 12]. Defendant also notes that Plaintiff has the option to file as an indigent if he cannot afford the initial outlay of fees for filing and service. [*Id.*].

Next, Defendant argues that Plaintiff lacks standing because he cannot demonstrate an injury arising from the requirement that a judgment debtor be served. [*Id.* at 13]. Defendant argues that, to legally challenge a law, a plaintiff must allege sufficient facts to demonstrate an injury-in-fact. [*Id.* at 13]. Defendant argues that, for an injunction, Plaintiff must demonstrate a substantial likelihood that he will suffer in the injury in the future and also must allege an injury that is palpable, not abstract. [*Id.* at 13-14]. Defendant notes that all of Plaintiff's allegations relate to service requirements and so he is alleging a speculative harm. [*Id.* at 14]. Defendant further notes that, when Plaintiff's case was dismissed in state court, he did not raise his constitutional claims or appeal the dismissal. [*Id.* at 14-15]. Defendant then argues that no injury exists to support standing for a due process claim because, even if Plaintiff is forced to serve Shehnaz again and

22

service on her is not accomplished in a timely manner, the alleged injury is not traceable to Alexander.  [*Id.* at 15].

Third, Defendant argues that Plaintiff lacks standing because his equal-protection claims fail to state a claim for which relief can be granted.  [*Id.* at 16]. Defendant argues that having different classes of garnishment plaintiffs is justified because the State has an interest in reducing the likelihood of having dependent spouses or children become reliant on public funds for support and Plaintiff, as a judgment-creditor, is in a different class from dependent spouses and children.  [*Id.*]. Defendant argues that such policy choices are within the purview of the state and a rational basis exists for treating the two classes differently.   [*Id.* at 16-17]. Defendant also argues that Plaintiff has not put forth a sustainable equal-protection claim in either his Complaint or proposed amended complaint.  [*Id.* at 18].  He also contends that Plaintiff has been able to recover his garnishment and so no case or controversy exists and any amendment would be futile.  [*Id.* at 18].

In reply, Plaintiff argues that Shehnaz's wages are not at issue and the problem is the wage-garnishment statutes, which deprive creditors of equal protection.   [Doc. 51 at 2].   Plaintiff notes that, under  § 18-4-4(c)(3), a judgment-creditor with family-support garnishment need only file one summons, while judgment-creditors like him are required to file new summons every six

months under § 18-4-4(c)(1).  [*Id.*].  Plaintiff points to wage-garnishment statutes from other states in support of his claim.  [*Id.* at 3-4].  He argues that his case is identical to *Strickland* and that the "real and immediate" likelihood of danger is all that is required to create an in injury-in-fact.  [*Id.* at 5].  Plaintiff submits that the injury does not need to be unlawful for the resulting deprivation to be traceable to Defendant and that the injury is fairly traceable to Defendant because he docketed and issued the summons.  [*Id.*].  Plaintiff has attached a copy of what is asserted to be Nebraska's garnishment law to his reply.  [*See id.* at 7-9].

B.     *Applicable Law*

Federal Rule of Civil Procedure 15(a) governs a party's right to amend its pleadings prior to trial.  The rule provides, in relevant part, as follows:

(1)     Amending as a Matter of Course. A party may amend its pleading once as a matter of course within:
(A)     21 days after serving it, or
(B)     if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

Fed. R. Civ. P. 15(a)(1).  In all other cases, a party must obtain the opposing party's written consent or leave of the court before filing an amended pleading.  Fed. R. Civ. P. 15(a)(2).  Rule 15(a)(2) requires that the Court freely give leave to amend when justice so requires.  *Id.*  A court properly denies a motion to amend when the

24

amendment would be futile. *Delgiudice v. Primus*, 679 Fed. Appx. 944, 949 (11th Cir. Feb. 16, 2017) ("A district court may properly deny leave to amend the complaint under Rule 15(a) if an amendment would be futile" and "the complaint as amended would still be properly dismissed.") (citations omitted); *see also Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007) ("Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant.") (citing *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir. 2004)).

Article III of the Constitution limits the jurisdiction of federal courts to "cases" and "controversies." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992). The case-or-controversy constraint, in turn, imposes a limitation on federal courts commonly referred to as "justiciability." *United States v. Florida Azalea Specialists*, 19 F.3d 620, 621-22 (11th Cir. 2004) (citation omitted). The justiciability doctrine prevents the courts from overreaching on the powers of the other branches of government, including the legislative branch, and has three components: standing, ripeness, and mootness. *Socialist Workers Party v. Leahy*, 145 F.3d 1240, 1244 (11th Cir. 1998).

At issue in the current matter is standing. Standing "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal

wrong." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)  Standing is an "irreducible constitutional minimum." *Strickland*, 772 F.3d at 883.  To demonstrate standing, a plaintiff must show that (1) he has suffered an injury in fact, (2) there is a causal connection between the injury and the conduct complained of, and (3) it is likely, not merely speculative, that the injury may be redressed by a favorable decision. *Lujan*, 504 U.S. at 560-61.  Where, as here, a case is at the pleading stage, the plaintiff must "clearly . . . allege facts demonstrating" each element. *Warth v. Seldin*, 422 U.S. 490, 517-18 (1975).

Under elementary principles of standing, a plaintiff must allege and show that he personally suffered an injury. *Griffin v. Dugger*, 823 F.2d 1476, 1482-83 (11th Cir. 1987).  If he cannot show personal injury, then no Article-III case or controversy exists, and a federal court is powerless to hear his grievance. *Id.*  To establish an injury in fact, a plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."  *Lujan*, 504 U.S. at 560 (internal quotation marks omitted); *see also Trichell v. Midland Credit Management, Inc.*, 964 F.3d 990, 996-97 (11th Cir. 2020).  Where a plaintiff is seeking declaratory or injunctive relief, and not damages for injuries already suffered, the plaintiff must allege facts from which it appears that there is a substantial likelihood that he will

26

suffer another injury in the future. *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1346 (11th Cir. 1999). Economic and physical harm qualify as injuries in fact for standing purposes. *Adinolfe v. United Techs. Corp.*, 768 F.3d 1161, 1172 (11th Cir. 2014).

In *Strickland*, the plaintiff received funds from a workers' compensation claim after suffering permanent disability, received Social Security payments, and was otherwise of limited funds. 772 F.3d at 878. These funds were protected by law from garnishment. *Id.* at 878-79. Nevertheless, one of plaintiff's creditors had the Clerk of the Court for the State Court of Gwinnett County, Alexander, issue a garnishment summons that froze plaintiff's workers' compensation funds for almost four months before the creditor finally conceded that the funds were exempt from garnishment. *Id.* at 879. The plaintiff therefore sought declaratory and injunctive relief as to the Georgia post-judgment garnishment statute to prevent that same thing from happening again, as the plaintiff and his wife remained judgment debtors. *Id.* The district court dismissed plaintiff's suit for lack of standing, but the Eleventh Circuit reversed, finding a substantial likelihood that plaintiff would again be the subject of garnishment summons. *Id.*[9]

---

[9]    On remand, the district court found that Georgia's post-judgment wage garnishment statute violated due process and so was unconstitutional.

27

As further background, the *Strickland* court noted that one of the defendants, Discover Bank ("Discover"), instructed its counsel to file suit against plaintiff and eventually obtained a default judgment of around $17,000. *Id.* Approximately three months later, Discover's counsel filed a garnishment action against funds held by the plaintiff at Chase Bank ("Chase"), including his workers compensation and Social Security funds. *Id.* Alexander subsequently issued a garnishment summons to be served on Chase in accordance with Georgia's statutory requirements that advised Chase to withhold all of plaintiff's property except what was exempt, but did not identify what types of property were exempt, which was not required. *Id.* at 879-80.

The Eleventh Circuit found that the case was justiciable, not moot, and remanded for consideration of whether Georgia's post-judgment garnishment statute was constitutional. *Id.* at 883-90. In determining justiciability, the Court

_____

*Strickland v. Alexander*, 153 F. Supp. 3d 1397, 1414 (N.D. Ga. 2015). Alexander was enjoined from issuing any garnishment summons to the extent they were inconsistent with its decision. *Id.* at 1416. However, Alexander subsequently filed a motion to alter or amend the judgment, which was granted, and which limited the court's ruling to O.C.G.A. § 18-4-60 et seq. as applied to garnishment actions filed against a financial institution holding a judgement debtor's property under a deposit agreement or account. *Strickland v. Alexander*, 154 F. Supp. 3d 1347, 1348, 1351 (N.D. Ga. 2015). The portions of the post-judgment garnishment statute in this matter, therefore, were not at issue in *Strickland* and remain valid.

28

found that an injury in fact existed because "it [wa]s substantially likely that it [wa]s simply a matter of time before another judgment creditors [sought] to garnish the monies that [plaintiff had] in at least one of their bank accounts." *Id.* at 885. The Court found that causation existed because Alexander was the county clerk with the responsibility of processing garnishments and would be required to perform the same procedures in the future that he followed in the current matter. *Id.* at 885-86. The Court therefore found that the plaintiff's injury was fairly traceable to Alexander's conduct. *Id.* at 886. Finally, the Court found that plaintiff's injury was redressable because the court could declare the statute unconstitutional or enjoin similar actions in the future. *Id.*

The Equal Protection Clause of the Fourteenth Amendment prohibits any State from denying any person within its jurisdiction equal protection under the law. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Phrased otherwise, similarly situated people must be treated alike. *Id.* The Equal Protection Clause is not, however a license for courts to judge the fairness or logic of legislative choices. *F.C.C. v. Beach Comms., Inc.*, 508 U.S. 307, 313 (1993) (citations omitted). Where a classification is not along suspect lines and does not infringe upon fundamental constitutional rights, and instead is in the area of social

and economy policy, it must be upheld "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Id.*

"The Fourteenth Amendment protects against the government's deprivation of liberty or property without procedural due process." *Warren v. Crawford*, 927 F.2d 559, 563 (11th Cir. 1991). Though Plaintiff does not mention 42 U.S.C. § 1983, the Court construes his allegations as a Section 1983 claim. *Wallace v. Bd. of Regents*, 967 F. Supp. 1287, 1292 (S.D. Ga. 1997) (citing *Zinermon v. Burch*, 494 U.S. 113 (1990)) ("Plaintiffs allege the violation of their procedural due process rights under the Fourteenth Amendment, which states a claim under § 1983"); *see also Strickland v. Alexander*, No. 1:12-cv-02735-MHS, 2013 WL 12053126, at *2 (N.D. Ga. Apr. 11, 2013) , *rev'd on other grounds by Strickland v. Alexander*, 772 F.3d 876 (11th Cir. 2014). To establish a claim under § 1983, "a plaintiff must show that a person acting under color of state law deprived him [or her] of a federal or constitutional right." *Wallace*, 967 F. Supp. at 1292 (citing *Edward v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1522 (11th Cir. 1995)). A plaintiff must also show a constitutionally-inadequate process. *Tomberlin v. Clark*, 1 F. Supp. 3d 1213, 1230 (N.D. Ala. 2014).

C.    **Analysis**

The Court concludes that Plaintiff's Amended Motion for Leave to Amend His Complaint, [Doc. 48], is due to be **DENIED**.  Because more than twenty-one days have passed since Defendant's Motion to Dismiss, and Defendant has not consented to the motion, the amendment must be approved by the Court.  Fed. R. Civ. P. 15(a)(2).  The Court is also cognizant that leave to amend should be given freely.  *Id.*  Nevertheless, the Court concludes that the proposed amendment would be futile, because Plaintiff lacks standing to bring his claims.  *Strickland*, 772 F.3d at 883.  Specifically, the Court concludes that Plaintiff has failed to carry his burden of proving, either in his original or proposed amended complaint, a sufficient injury in fact.  [*See generally* Docs. 1, 4, 12, 48-1]; *see also Lujan*, 504 U.S. at 560-61; *Warth*, 422 U.S. at 518 (stating that, at the pleading stage, the plaintiff is required to allege facts demonstrating each element); *Klayman v. Clinton*, 668 Fed. Appx. 351, 352 (11th Cir. Aug. 15, 2016) (affirming dismissal of complaint and rejection of motion to amend complaint due to plaintiff's failure to demonstrate Article-III standing).

Comparing the current case to *Strickland*, upon which Plaintiff heavily relies, is instructive.  In *Strickland*, the plaintiff was of limited income and relied on a workers' compensation payment and Social Security funds.  772 F.3d at 878.

Those funds were held by the plaintiff's bank following the receipt of a garnishment summons despite the fact that those funds were exempt under Georgia law. *Id.* at 879-80. Importantly, the summons issued to the plaintiff's bank noted that some funds were exempt but did not identify them, which was permitted under the then-current Georgia law. *Id.* Due to this discrepancy in the statute, the plaintiff was deprived for months of funds that he and his wife needed to pay for basic necessities. Plaintiff's case here is quite different. In this matter, Plaintiff does not dispute that he has previously used, and is currently using, the post-judgment wage garnishment statute successfully to obtain thousands of dollars from Shehnaz in case numbers 18-GC-00817 and 19-GC-03497. [*See* Doc. 1 at 2-3; Doc. 48-1 at 4-5; *cf.* Doc. 49 at 5-6].

Plaintiff's complaints regarding the post-judgment wage-garnishment statute relate primarily to its length, service, and fee requirements. The Court concludes that these complaints are insufficient to create an injury-in-fact for purposes of Article-III standing. For example, in both his original and proposed amended complaints, Plaintiff argues that there is a conflict between O.C.G.A. § 18-4-4(c)(1) and § 18-4-9, in that the former limits the period for a continuing wage garnishment to 179 days and does not specify that a new summons will be issued after two years while the latter states that a summons of garnishment may be reissued until a

32

judgment is paid off and may not be reissued after two years based on the same affidavit.  [Doc. 1 at 4; Doc. 48-1 at 10].  Plaintiff asks why a garnishment is limited to 179 days if it is meant to continue until the debt is paid.  [Doc. 1 at 4].

To the extent that Plaintiff's argument is understood, it appears to be a misinterpretation of the statutes.  Section 18-4-9 states that no "new summons of garnishment *on the same affidavit of garnishment* shall be issued after two years from the date of the original filing of such affidavit."  O.C.G.A. § 18-4-9 (emphasis added).  It therefore does anticipate that a new summons will be issued, but that it will be based on a new affidavit.  Accordingly, there is therefore no conflict with § 18-4-4(c)(1)'s failing to specify that no new summons will be issued after two years.  *See* O.C.G.A. § 18-4-4(c)(1).

As to why a new summons must issue after two years, Plaintiff overlooks ready explanations for this requirement.  For instance, as Plaintiff himself points out, the Clerk of Court for Gwinnett County is responsible for processing garnishments by docketing the garnishment affidavit, issuing the summons of garnishment, depositing the garnished wages into the court registry, and disbursing the money, [Doc. 48-1 at 6].  The State is not obligated to provide these services free of charge and the reissuance of summons after two years provides an opportunity for the state to collect fees to subsidize them.  *M.L.B. V. S.L.J.,*

519 U.S. 102, 119 (1996) (stating that the general rule in civil cases is that that "indigent persons have no constitutional right to proceed in forma pauperis [IFP]") (brackets added))); *cf. Polanco v. Hopkins*, 510 F.3d 152, 156 (2d Cir. 2007) (stating that IFP status is a "congressionally created benefit which can be extended or limited by Congress," not a constitutional right. (quoting *Rodriguez v. Cook*, 169 F.3d 1176, 1178 (9th Cir. 1999))); *Tyson v. Jordan*, No. C/A 6:10-1528-MBS, 2010 WL 3257840, at *2 (D.S.C. July 12, 2010) (stating that "because there is no federal constitutional right for any civil litigant, including one who might or might not qualify as an indigent for purposes of waiver of case filing fees, to avoid payment for court costs such as the fee currently charged in South Carolina civil courts for the filing of motions"), *report and recommendation adopted*, No. C/A 6:10-1528-MBS, 2010 WL 3257861 (D.S.C. Aug. 16, 2010). The reissuance is also an opportunity to ensure that the debt at issue still exists and that a garnishee is not continuing to pay off a completed obligation, which supports requiring the judgment-creditor to submit a new affidavit. *See* O.C.G.A. § 18-4-9.

Plaintiff next argues that O.C.G.A. § 18-4-10(b) causes an undue delay in Shehnaz's answer and the loss of two and a half months garnishment due to the discontinuity between when Plaintiff received a garnished check in early October and when a new summons was issued in mid-November. [Doc. 1 at 4;

Doc. 48-1 at 10-11]. Section 18-4-10(b), however, requires a garnishee to file an answer between 30 and 45 days after service of a summons. *See* O.C.G.A. 18-4-10(b) ("[T]he garnishee's answer shall be filed with the court issuing the summons not sooner than 30 days and not later than 45 days after service of the summons . . . ."). Although Plaintiff complains of the delay caused by this provision in the collection of funds, he does not allege that a garnishee should not be allowed time to respond, and, if necessary, contest, an attempted garnishment.

Plaintiff further contends that the length of time it will take him to collect his debt, and the fees he will be forced to pay in the meantime, are unreasonable. [Doc. 1 at 6; Doc. 48-1 at 6-7]. In support of his position, Plaintiff cites to garnishment statutes from different states. [Doc. 1 at 7-8]. Plaintiff does not allege, however, that the fees involved are exorbitant or are inconsistent with fees for similar state services. [Docs. 48-1, 51]. More importantly, the length of time it will take him to recoup his debt is apparently the result of the fact that the garnishee is only earning $14 per hour. [*See* Doc. 49 at 12]. The predicament Plaintiff has is not the fault of Defendant or a defect in the post-judgment wage-garnishment statute. In addition, Plaintiff has not disputed Defendant's assertion that the relevant Georgia statues allow for the recovery of costs associated with a summons and that he may file as an indigent if he cannot afford the initial outlay of fees for

35

filing and service.  [Doc. 49 at 12; *see generally* Doc. 51].  The fact that States other than Georgia have taken different approaches to post-judgment garnishment cases does not create an economic harm to Plaintiff or an injury for standing purposes.  [Doc. 48-1 at 15].

Plaintiff also argues that the service of the summons should be left with the garnishee-employer and that the post-judgment wage garnishment's service obligations placed an undue burden on him and have caused him great aggravation. [Doc. 12 at 6].  Plaintiff further argues that the current requirements that service be made within three days after the service on the garnishee by certified mail and first-class mail were not included in the previous statute and neither was the requirement that service be made upon a defendant within three days.  [Doc. 48-1 at 11-12].

However, Plaintiff does not address the fact that it is he who is attempting to collect on a debt, and so any burden related to collection most logically rests with him and not the entity currently employing the garnishee, who is otherwise uninvolved in the dispute.  Much the same reasoning applies to service.  In any event, these service provisions do not appear to have created economic harm to Plaintiff, as he has alleged, outside of payments made for certified letters.  The Court also notes that the service requirements are not necessarily unique to post-

judgment garnishment cases. For example, that the Federal Rules of Civil Procedure require detailed, and often strict, provisions related to service. *See generally* Fed. R. Civ. P. 4. Finally, the Court further finds that the fact that the previous statute contained different requirements as to when service needed to be made, or the how such service needed to be made, does not create an injury-in-fact for purposes of standing.

In short, Plaintiff has availed himself of services offered by the State to secure a judgment amount, serve a summons, and secure payments from a garnishee. His complaints regarding the post-judgment wage-garnishment statute relate to things such as the amount of time it will take him to secure his judgment, which is largely outside Defendant's control, relatively modest administrative fees, and a garnishee's ability to answer or challenge a summons. The Court finds that these allegations do not create an injury for standing purposes.

In the Supplemental Pleading and in his proposed amended complaint, Plaintiff also asserts a violation of the Equal Protection Clause. [*See* Doc. 4; Doc. 51 at 2]. The thrust of Plaintiff's Equal Protection Clause appears to be that, under O.C.G.A. § 18-4-4(c)(3), a judgment-creditor with a family-support type garnishment need only file one summons, while judgment-creditors like him are required to file a new summons every six months under § 18-4-4(c)(1). [Doc. 51

at 2].  As noted, the Equal Protection Clause requires that similarly situated people be treated similarly, but is not a license for courts to judge the fairness or logic of legislative choices.  *City of Cleburne, Tex.*, 473 U.S. at 439; *Beach Comms., Inc.*, 508 U.S. at 313.  Plaintiff has not alleged, and the facts do not indicate, that the separate classifications infringe upon fundamental constitutional rights. [*See generally* Docs. 4, 48-1]; *Beach Comms., Inc.*, 508 U.S. at 313.  Accordingly, there need only be a reasonably conceivable state of facts for a rational basis for the classification to exist.  *Id.*; *Jones v. Governor of Fla.*, No. 20-12003, 2020 WL 5493770, at *48 (11th Cir. Sept. 11, 2020).  Here, Defendant argues that the different classes of garnishment plaintiffs are justified because the State has an interest in reducing the likelihood of having dependent spouses or children become reliant on public funds for support.  [Doc. 49 at 16].  The Court finds that this is a rational basis for the different classifications, *Beach Comms., Inc.*, 508 U.S. at 313, and that, accordingly, Plaintiff has not suffered any injury based on a violation of the Equal Protection Clause.[10]

---

[10]     The Court adds that the "Equal Protection Clause does not require government decisionmakers to articulate any reason for their actions."  *Haves v. City of Miami*, 52 F.3d 918, 922 (11th Cir. 1995) (citing *Beach*, 508 U.S. at 315). The legitimate governmental purpose merely has to be one "which the enacting government body *could* have been pursuing."  *Id.* at 921 (emphasis in original). Further, the purpose need not have evidentiary support in the record. *Id.*  at 922.

Finally, in his Second Supplementary Pleading and in his proposed amended complaint, Plaintiff asserts a violation of the Due Process Clause. [Doc. 12; Doc. 48-1]. Specifically, Plaintiff argues that his first case was dismissed because he was unaware of the service requirements under § 18-4-8 and that he filed his forms via first class mail and Shehnaz responded, but the presiding judge still threw out the case and he was forced to repay various administrative fees. [Doc. 12 at 1-2]. Plaintiff notes that Shehnaz subsequently changed jobs, it took months for him to locate her new employment, and he had to pay for it to be refiled. [*Id.* at 2-3].

---

Whether there is a rational basis that "further[s] the hypothesized [governmental] purpose" also is not dependent upon "whether that basis was actually considered by the legislative body," but instead focuses upon the existence of "a conceivably rational basis." *Id.* (citation and internal quotation marks omitted); *see also U.S. R.R. Ret. Bd. v. Fritz*, 449 U.S. 166, 179 (1980) (Under rational basis review, it is " 'constitutionally irrelevant [what] reasoning in fact underlay the legislative decision.' ") (citation omitted).

"[A] statute is presumed constitutional, and the burden is on the one attacking the law to negate every conceivable basis that might support it, whether or not the basis has a foundation in the record." *Heller v. Doe by Doe*, 509 U.S. 312, 320-21 (1993); *Panama City Med. Diagnostic Ltd. v. Williams*, 13 F.3d 1541, 1546 (11th Cir. 1994) (government has no obligation to produce evidence to sustain rationality of statutory classification.). In other words, if there are "plausible reasons" for the government's action, the court's "inquiry is at an end." *Beach*, 508 U.S. at 313-14. Thus, "[i]n the ordinary case, a law will be sustained if it can be said to advance a legitimate government interest, even if the law seems unwise or works to the disadvantage of a particular group, or if the rationale for it seems tenuous." *Romer v. Evans*, 517 U.S. 620, 632 (1996) (collecting cases).

39

At the outset, the Court notes again that Plaintiff does not deny that he has already twice successfully served and is receiving funds from the garnishee. Further, the Court finds that Defendant is not responsible for Shehnaz's changing employment. Such eventualities appear to be largely unavoidable. Plaintiff's lack of knowledge of the statute's service requirements also does not constitute a legitimate grievance against it. It is therefore unclear what right Plaintiff is asserting he has been deprived of, and Plaintiff does not explicitly identify any. *Wallace*, 967 F. Supp. at 1292; [*see generally* Docs. 12, 48-1].   Instead, having successfully engaged the post-judgment wage-garnishment statute, Plaintiff identifies parts of the statutes he believes could be improved and which have caused him great aggravation.  [Doc. 12 at 6].  The Court finds that his aggravation is not sufficient to create an injury-in-fact for purposes of standing.  Plaintiff's recourse to remedy his dissatisfaction with the statute is to the legislative branch. [11]

_____

[11]     The Court further notes that a § 1983 claim also requires that inadequate state procedures exist to remedy the procedural deprivation; in other words, the state must have the opportunity to remedy its procedural failings before being subject to a procedural due process claim. *Cotton v. Jackson*, 216 F.3d 1328, 1331 (11th Cir. 2000).  In his original complaint, Plaintiff did not indicate that he had appealed any of the decisions that he complained of or pursued them in any way.  [*See* Doc. 1, 4, 12].  In his proposed amended complaint, Plaintiff asserts that his request for a certificate for immediate review in case number 19-GC-03497 was also denied and that he was unaware of his ability to file renewed cases in his two previous actions.  [Doc. 48-1 at 5, 5 n.1, 20].  At the very least, therefore, it seems

*Cf. Arizona v. Maricopa Cty. Medical Society*, 457 U.S. 332, 351 (1982) (denying an injunction in a Sherman Act case and stating that respondents' arguments regarding the Act were better directed to the Legislature).

Accordingly, the Court concludes that Plaintiff has failed to demonstrate an injury-in-fact sufficient to establish standing in either his original or proposed amended complaint. *Lujan*, 504 U.S. at 560-61; *Warth*, 422 U.S. at 517-18. Therefore, granting Plaintiff leave to amend would be futile. *Coventry First, LLC v. McCarty*, 605 F.3d 865, 870 (11th Cir. 2010); *Hall*, 367 F.3d at 1262-63. The Court therefore **DENIES** Plaintiff's Amended Motion for Leave to Amend His Complaint. [Doc. 48].

## V.    *Jurisdiction*

On February 13, 2020, the District Judge in this matter entered an Order noting that Plaintiff had not identified the basis for the Court's jurisdiction and ordering him to do so within 21 days. [Doc. 21 at 1-2]. Plaintiff timely filed a Notice of Court's Jurisdiction, arguing that the Court has jurisdiction to intervene under 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 5.1. [Doc. 24 at 1-2]. Plaintiff argues that "class of one" equal protection claims have previously been

_____

that Plaintiff has not tried to remedy the vast majority of the conduct he complains of here through mechanisms available at the state level.

recognized and that the Court should certify his Complaint under 28 U.S.C. § 2403(b).  [*Id.* at 2].  Finally, Plaintiff argues that Section 2 of Article III of the Constitution gives the Court jurisdiction to interpret the law of the United States.  [*Id.*].

Plaintiff subsequently filed an Amended Notice of Court's Jurisdiction, also within the require time, arguing that federal courts have jurisdiction over cases where federal questions are raised pursuant to 28 U.S.C. § 1331.  [Doc. 27 at 1].  Plaintiff argues that, since both Plaintiff and Defendant reside in the Northern District of Georgia, and Plaintiff has raised a constitutional issue, this Court has jurisdiction.  [*Id.* 1-2].  Plaintiff otherwise repeats the arguments from his earlier filing.  [*See generally id.*].

A "plaintiff without an injury in fact lacks Article III standing, and the federal courts do not have jurisdiction over his or her complaint."  *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008); *see also Pinson v. JPMorgan Chase Bank, NA*, 942 F.3d 1200, 1206 (11th Cir. 2019) ("Standing, a limitation on federal subject matter jurisdiction derived from Article III, requires plaintiffs to show they suffered an injury traceable to the defendant's conduct and redressable by a favorable decision.").  A dismissal for lack of standing has the same effect as a dismissal as a dismissal for lack of

subject matter jurisdiction. *Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d at 1232. Such a dismissal is entered without prejudice because it is not a judgment on the merits. *Id.*

As discussed at length above, after reviewing Plaintiff's original and proposed amended complaints, the Court concludes that Plaintiff lacks Article-III standing to assert his claims. Nothing in the Plaintiff's Notice of Jurisdiction, [Doc. 24], or Amended Notice of Court's Jurisdiction, [Doc. 27], raises issues not already discussed, and Plaintiff's arguments are therefore unpersuasive.

Accordingly, the Court lacks jurisdiction over the complaint and must dismiss it without prejudice. *Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d at 1235 (affirming district court's dismissal for lack of jurisdiction but reversing and remanding for entry of dismissal "without prejudice" rather than "with prejudice" as incorrectly entered originally); *see also Cummings v. State Farm Mut. Auto. Ins. Co.*, 323 Fed. Appx. 847, 848 (11th Cir. Apr. 22, 2009) ("Because the existence of a justiciable controversy is a jurisdictional requirement . . . the district court lacked jurisdiction and should have dismissed the action without prejudice.") (citing *Atlanta Gas Light Co. v. Aetna Cas. and Surety Co.*, 68 F.3d 409, 414 (11th Cir. 1995); *Carter v. Telectron, Inc.*, 554 F.2d 1369, 1370 (5th Cir. 1977)

(a dismissal for lack of jurisdiction must be without prejudice)).  All other pending motions not expressly ruled upon are **DENIED AS MOOT**.

## VI.    *Conclusion*

For the reasons stated above, Plaintiff's motions for recusal, [Doc. 45], and to amend, [Doc. 48], are **DENIED**, and Plaintiff's complaint is **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction.  All other pending motions— Plaintiff's Motion to Certify Class, [Doc. 6], Plaintiff's Motion for Judgment on the Pleadings, [Doc. 11], Plaintiff's Motion to Withdraw Motion for Judgment on the Pleadings, [Doc. 14], Plaintiff's Motion for a Three-Judge Court, [Doc. 15], Defendant's Motion to Dismiss for Failure to State a Claim, [Doc. 16], Plaintiff's Motion to Add Attorney General of Georgia, [Doc. 17], Plaintiff's Pro Se Motion for Leave to File Amended Complaint, [Doc. 23], Plaintiff's Motion for Reconsideration, [Doc. 26], Plaintiff's Emergency Motion for Preliminary Injunctive Relief, [Doc. 28], Plaintiff's Pro Se Motion for Leave to Amend, [Doc. 33], Plaintiff's Pro Se Third Motion to Grant Leave to Amend, [Doc. 36], Plaintiff's Renewed Emergency Motion for Preliminary Injunctive Relief, [Doc. 40], and Plaintiff's construed Motion for Ruling on Pending Motions, [Doc. 46], are **DENIED AS MOOT**.

The Clerk is **DIRECTED** to close the case.

**IT IS SO ORDERED and DIRECTED**, this 28th day of September, 2020.

ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE